UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 NOV 20 AM 9:06

CLERK

BY _____ KAIC
DEPUTY CLERK

| | |
|---|---|
| THE UNIVERSITY OF VERMONT MEDICAL CENTER, INC., Plaintiff, | : : : : |
| v. | : : |
| GENERAL REINSURANCE CORP., Defendant. | : : : : |

Civil Action No. 5:15-cv-247

## COMPLAINT

Plaintiff, The University of Vermont Medical Center ("UVMMC") makes the following Complaint against the Defendant, General Reinsurance Corporation ("GRC").

### Nature of Action

1. This is an action for bad-faith insurance practices.

### Parties

2. Plaintiff, UVMMC, is a 501(c)(3) nonprofit corporation organized under the laws of the State of Vermont, with its principal place of business in Burlington, Chittenden County, Vermont, and at certain times relevant to this action has done business as "Fletcher Allen Health Care."

3. Defendant, GRC, is an insurance company with its principal place of business in Stamford, Connecticut.

### Jurisdiction and Venue

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between UVMMC and GRC, and the amount in controversy exceeds $75,000. Venue is proper in this Court because UVMMC is domiciled in Vermont.

1

## Background

### A.    Summary

5.  GRC, as insurer, issued an Excess Insurance Policy for Self-Insurer of Workers' Compensation and Employer Liability, to UVMMC (doing business as Fletcher Allen Health Care), as "Insured," Policy No. DX-014329C (the "Policy") for the period October 1, 2000 to October 1, 2001 (the "Policy Period").

6.  Pursuant to the Policy, Part One, GRC is required to indemnify UVMMC for "loss as a qualified self-insurer under the Workers Compensation Law in excess of the Insured's retention stated in Item 6 on the Information page but not for more than the limit of indemnity stated in item 7 of the Information Page."

   a.  The insurance afforded under the Policy "applies to losses paid by the Insured as a qualified self-insurer under the Workers Compensation Law for bodily injury by accident . . . provided:  1. The bodily injury by accident occurs during the period this policy is in force."

   b.  Part One defines "Loss" as "amounts actually paid by the Insured as a self-insurer under the Workers Compensation Law."

   c.  The retention stated in Item 6 on the Information Page is $500,000.

7.  The Policy, Part Four, Section A, also requires GRC to indemnify UVMMC "for a portion of the claim expenses incurred by" UVMMC, "determined by the ratio that the amount of loss paid by the Insurer bears to the total amount of the loss," which payments for claim expenses are "in addition to the Insurer's limit of indemnity."

8. On or about August 13, 2001, UVMMC received notice of a claim (the "Claim") that one of its employees ("Claimant") had sustained a bodily injury by accident arising out of and in the course of her employment by UVMMC on August 11, 2001, during the period the Policy was in force.

9. Thereafter, in direct and reasonable reliance upon GRC's contractual obligations under the Policy, UVMMC legally paid amounts to and/or on behalf of the Claimant under the Vermont Workers Compensation Laws totaling $1,017,710.70 and incurred claim expenses totaling $65,098.57, on account of the Claim.

10. Since at least as early as June 5, 2015, GRC has been obligated to indemnify UVMMC in the sum of $517,710.70 for losses paid in excess of the retention on account of the Claim plus a pro-rated portion of the claim expenses totaling $65,098.57.

11. GRC has failed and refused to indemnify UVMMC for the losses it has paid on account of the Claim in excess of the Retention and for a portion of the claim expenses incurred by UVMMC, despite multiple demands.

12. After receiving notice of its obligation-to-indemnify UVMMC with respect to the Claim, GRC, through its agent Genesis, has made requests and assurances which were intentionally and, or, in the alternative, recklessly false and deceptive. These requests and assurances were made in an unlawful attempt to delay or avoid fulfilling its obligation to indemnify UVMMC.

13. GRC's obligation to indemnify UVMMC for the losses paid on account of the Claim in excess of the Retention and for a portion of the claim expenses incurred by UVMMC was and is not fairly debatable.

14. GRC has engaged in unfair, deceptive and bad faith insurance practices, with the deliberate intention of compelling its insured, UVMMC, to incur legal fees and expenses and to initiate litigation, in order to delay or evade fulfilling its obligations under the Policy.

15. GRC's unfair, deceptive and bad faith insurance practices in connection with this claim are part of and in accordance with a systematic, deliberate, and willful business practice devised and employed by GRC in responding to claims for excess insurance benefits in Vermont.

**B.      UVMMC satisfied all contractual conditions for coverage**

16. The Policy, Part One, Section D,  states five specific circumstances under which GRC "will not indemnify the Insured for any payments made by the Insured in excess of benefits regularly required by the Workers Compensation Law: "if such excess payments are required because:  1.  of serious and willful misconduct of the Insured;  2.  The Insured employed an employee in violation of law;  3. the Insured failed to comply with a health or safety law or regulation; 4. in violation of the Workers' Compensation Law, the Insured discharged, coerced, or otherwise discriminated against any employee; or 5. the Insured violated or failed to comply with any Workers Compensation Law."

17. GRC has never claimed, and in good faith could not claim, that UVMMC's payments made in excess of the Retention were caused by any serious and willful misconduct by UVMMC, and there would be no factual or legal basis for such a claim.

4

18. GRC has never claimed, and in good faith could not claim, that UVMMC employed the Claimant in violation of law, and there would be no factual or legal basis for such a claim.

19. GRC has never claimed that the Claim was caused by any violation of any health or safety law or regulation, and there would be no factual or legal basis for such a claim.

20. GRC has never claimed that in violation of the Workers' Compensation Law, UVMMC discharged, coerced, or otherwise discriminated against the Claimant, and there would be no factual or legal basis for such a claim.

21. GRC has never claimed that the amounts paid by UVMMC on account of the Claim violated or failed to comply with any Workers Compensation Law, and there would be no factual or legal basis for such a claim.

22. Therefore, all conditions for coverage under the Policy have been satisfied.

**C.      GRC's bad faith claim handling**

23. The Policy, Part Seven, ¶A Conditions, states that "Notice of accident given to the Insurer shall contain complete details of the injury" and in the event of any claim "which appears to involve indemnity by the Insurer, the Insured shall give the Insurer:  (a) all notices and legal papers related to the claim, . . . . and (b) copies of reports on investigations made by the Insured on such claims."

24. The Policy, Part Seven, ¶ B, Duties of Insured and Insurer, states that "1.  The Insurer has no duty to investigate, handle, settle or defend and claims," and "2. . . .  has the right and shall be given the opportunity by the Insured to associate with the Insured in the defense, investigation, or settlement of any claim . . . which appears to involve indemnity by the

Insurer," and that in "such association, the Insured and the Insurer shall cooperate in all aspects of defense, investigation or settlement."

25. The Policy, Part Seven, ¶ D, Payment of Loss to Insured, states that "the Insured will pay all benefits required of the Insured by the Workers Compensation Law" and that "indemnity by the Insurer will be made at monthly intervals after the Insurer has received proof of payments by the Insured. Workers Compensation awards shall not be settled on a lump sum basis without written consent of the Insurer."

26. UVMMC reported the Claim to GRC initially in 2001, and submitted an Update Report in 2003.

27. On May 8, 2009, UVMMC's third party claims administrator, Cannon Cochran Management Services, Inc. ("CCMSI"), sent an email to GRC's general inbox, referencing the GRC claim number, for "Status inquiry and update." The email stated:

> I am the workers' compensation third party claims administrator for the above insurance policy year 6/15/97-10/01/01. I have your claim number as listed above. Please see the attached GRC Memorandum for WC sent on 08/27/03 as a follow-up to our initial reporting of 08/11/01. . . . Can you please direct me to the appropriate reporting office for an update on the claim?

28. On May 26, 2009, CCMSI received a letter from GRC's agent, Genesis Underwriting ("Genesis") dated May 11, 2009 acknowledging receipt of the May 8, 2009 email and requesting an up-to-date report. CCMSI sent updates to Genesis on April 26, 2010 and again on May 9. 2011.

29. On November 4, 2011, CCMSI received a voice-mail message from "Sharon" at Genesis, who requested a call back at (312) 267-8523. CCMSI returned the call, and the general operator advised that there was no "Sharon" in the claim department and that the claim number on the voice-mail message was also not accurate. She provided the correct claim

number and advised that the claim was being handled by a Genesis employee, Lisa Sabia. CCMSI immediately called Ms. Sabia. Ms. Sabia, however, was out of the office. As a result, CCMSI left her a voice-mail message.

30. On December 7, 2011, CCMSI received a call from Bill Burns at Genesis, and provided a verbal status-report.  Mr. Burns provided an email address for sending reports.

31. On February 22, 2013, CCMSI sent an e-mail update to the address provided by Mr. Burns.  The update included a reserve worksheet and copies of medical reports indicating a change in the Claimant's condition that would result in additional exposure, raising the Reserves over the reporting threshold.  CCMSI also sent a complete payment-history on the claim.

32. Ms. Sabia responded by e-mail on March 1, 2013, asking for the First Report of Injury, any and all medical reports diagnosing the workers'-compensation injury, payment history, and a drug run for 2012.  She also instructed CCMSI to "PLEASE REPLY TO: IntelligenClaims@genre.com."  CCMSI sent the requested information on March 12, 2013.

33. On September 4, 2013, CCMSI provided an updated status-report and payment history to Genesis. In its update, CCMSI stated: "As you can see, the SIR [self-insured retention] is reached for paid to date.  Please advise regarding the reimbursement request process as per this policy and specific policy/carrier requirements."

34. Ms. Sabia sent a reply email on September 11, 2013 providing directions for submitting reimbursement requests through the Genesis website.

35. CCMSI submitted a reimbursement request on October 18, 2013, following the procedure provided by Ms. Sabia.

36. CCMSI submitted a second request on October 30, 2013—and third request on April 2, 2014.

37. In June 2014, Ms. Sabia acknowledged having received CCMSI's spreadsheet for its reimbursement request in an acceptable format. She also instructed CCMSI to assign GRC's approved defense counsel, McCormick, Fitzpatrick, Casper & Burchard, to handle the defense and/or settlement of the Claim.

38. On August 4, 2014, Ms. Sabia emailed CCMSI asking to be contacted to discuss the reimbursement-request submission procedures.

39. A few days later on August 22, 2014, Ms. Sabia and CCMSI discussed the request. During this discussion, Ms. Sabia specifically confirmed GRC's coverage of the Claim. She questioned why medical payments were being made to Fletcher Allen Health Care, the insured, and was advised that FAHC, in addition to being the Claimant's employer responsible for the Claim, provided medical care to Claimant for the injuries which were part of her Claim. Ms. Sabia also requested additional medical information regarding Claimant's entitlement to a shoulder replacement surgery in light of early medical reports indicating that the condition to be addressed by this surgery was not caused by Claimant's work injury. However, she advised that GRC would require a written request on UVMMC letterhead in order to provide a copy of the Policy.

40. On October 21, 2014, CCMSI sent Ms. Sabia an email following up on the August 22, 2014 discussion. In the email, CCMSI provided the written request for a copy of the Policy, and expressed a desire to resolve any questions regarding payments under the Policy in advance of the formal hearing on the Claim in March 2015 [*i.e.,* the final merits hearing before a Department of Labor Administrative Law Judge] and the mandatory

mediation session scheduled for January 2015, and concluded, "I will also communicate with you well prior to the mediation in order to obtain authority for settlement, if required."

41. Thereafter, GRC willfully and deliberately commenced and executed a bad faith scheme to cause UVMMC to enter into a lump sum settlement agreement to mitigate the risk of incurring losses far in excess of the lump sum settlement, and then to evade or delay fulfilling its obligations under the Policy after the case was settled.

42. On October 31, 2014, CCMSI phoned Ms. Sabia to request an update and reiterate its request for a copy of the Policy. CCMSI also asked that Genesis respond in writing if any coverage issues were anticipated and, or, in the alternative, if reimbursement was expected to be less than 100%.

43. In furtherance of its bad faith scheme, GRC provided a copy of the Policy, but it was not for the correct policy-period.  CCMSI emailed Genesis "IntelligenClaims" acknowledging receipt of the policy, but requested the version for the correct period.

44. On December 19, 2014, CCMSI sent Ms. Sabia a follow-up email asking for a status update on the claim.  In furtherance of GRC's bad faith scheme, CCMSI received an out-of-office reply.  This automatic reply did not state how long Ms. Sabia would be unavailable.  Per directions in the out-of-office message, CCMSI, therefore, directed its status-update request to Sharon Zielinski.

45. In furtherance of its bad faith scheme, GRC ignored this request, despite having been advised of the upcoming mediation and formal hearing.

46. On January 12, 2015, CCMSI again sent an email to Ms. Zielinski, with a copy to, among others, Ms. Sabia.  In this email, marked "time sensitive," CCMSI outlined the then

current litigation status of the claim. Specifically, the email again warned of the upcoming formal hearing before the Vermont Department of Labor as well as the mediation that would take place before the hearing, noted that the claim had potential additional exposure in excess of $900,000, based on the assessment of GRC's approved defense counsel, and requested a response with authority to settle.

47. On January 16, 2015, having received no response from Genesis, UVMMC's engaged legal counsel, who wrote to Ms. Zeilinski requesting an immediate response.

48. On January 19, 2015, CCMSI received a voice message from David "Trean" (phonetic spelling) at Genesis. In his message he stated that he would be filling in for Ms. Sabia, who was out until February. CCMSI, in response, left Mr. Trean a message asking that he call back when he got the message and to provide a best time for calling in the future. In furtherance of GRC's bad faith scheme, Mr. Trean never responded.

49. On January 21, 2015, Dave Duran, of Genesis, spoke with GRC's approved defense counsel on the Claim, who immediately provided Mr. Duran with all materials he requested, and stated, "I hope we can work together speedily in the future to resolve this matter on behalf of [UVMMC]."

50. On January 30, 2015, CCMSI placed a phone call to Mr. Duran. In furtherance of GRC's bad faith scheme, Mr. Duran informed CCMSI that Genesis would not provide authority to settle the Claim, and that the most Genesis could provide before mediation would be a Letter of Consent and Reservation of Rights, which might or might not be issued before the scheduled mediation.

51. In furtherance of GRC's bad faith scheme, in February 12, 2015, Mr. Duran sent a letter to CCMSI in which he stated, among other things, that "Genesis hereby consents to the

payment of a lump-sum for proper settlement of all future Workers' Compensation

Indemnity and Medical benefits owed, if any," on account of the Claim, but asserted that

"[c]onsent to a lump-sum payment does not estop GRC from reserving rights or denying

a duty to indemnify."

52. On February 13, 2015, UVMMC's attorney wrote to Mr. Duran as follows:

> As stated in my letter of January 16, 2015, we have been engaged by the University of
> Vermont Medical Center (UVMMC) through its third-party claims administrator, Canon
> Cochran Management Services, Inc. (CCMSI) in connection with UVMMC's claim for
> indemnification under the above-referenced insurance policy ("the Policy") for the
> above-referenced claim ("the Claim"). As you know, a mandatory mediation session is
> scheduled for next Monday, February 16, 2015. If you would like to participate in that
> mediation session, please notify [CCMSI adjuster] and [GRC's approved defense
> counsel].
>
> Your letter of February 12, 2015 to [CCMSI adjuster] provides Genesis' written consent
> to a lump sum settlement of this claim. Your letter asserts that Genesis' "consent to a
> lump-sum payment does not estop Genesis from reserving rights or denying a duty to
> indemnify," but it does not purport to reserve any rights or to deny Genesis's duty to
> indemnify UVMMC, and it suggests no basis upon which Genesis might decline to
> indemnify UVMMC. Accordingly, UVMMC/CCMSI, with the advice and assistance of
> its defense counsel, . . . , whose written and verbal assessments and recommendations
> have been provided to Genesis, intends to attempt to settle this claim for an amount to be
> negotiated, with the understanding and expectation that Genesis will indemnify UVMMC
> for amounts actually paid on account of this claim, including payments in connection
> with the settlement, exceed its retention, and for Genesis' pro rata share of claim
> expenses incurred by UVMMC. UVMMC does not understand or agree that Genesis has
> effectively reserved its right to deny coverage under the Policy on any basis, and
> UVMMC respectfully reserves all of its rights and remedies in the event Genesis fails or
> refuses to indemnify UVMMC.

53. In furtherance if its bad faith scheme, GRC did not respond to this letter or otherwise

attempt to reserve any rights or to deny its duty to indemnify UVMMC, and it articulated

no basis upon which GRC might decline to indemnify UVMMC for the payments made

in connection with the lump sum settlement in excess of the Retention and for its pro rata

share of claim expenses.

54. In reliance upon GRC's failure to respond to UVMMC's attorney's letter of February 13, 2015 and its failure to assert any specific grounds upon which it might contest its duty to indemnify under the Policy, the Claim was settled at mediation by GRC's approved defense counsel.  During the mediation, CCMSI received a voice-mail message from Mr. Duran.  In his message, Duran stated Genesis' settlement valuation accorded with its approved defense counsel's valuation, fully understanding that such a settlement would cause the Claim to far exceed the Retention.

55. On February 18, 2015, GRC's approved defense counsel also spoke with Mr. Duran.  Mr. Duran congratulated counsel on the settlement and advised that Ms. Sabia would contact CCMSI to provide the details for submitting the information needed for GRC to pay the claim for indemnification.

56. On February 19, 2015, CCMSI submitted the information to GRC via the GENESIS IntelliGen Portal, in accordance with Ms. Sabia's instructions.  At this point, the authorized settlement had not yet been paid.  Accordingly, the payment request confirmed benefits "Paid to Date" under the Workers Compensation laws in the amount of $288,681.99 (indemnity) and $238,713.36 (medical), and claim expenses in the amount of $35,887.31.

57. Thus, as of February 19, 2015, GRC was obligated to indemnify UVMMC in the amount of $24,395.35 ($288,681.99 + $238,713.36 - $500,000) for losses incurred through February 19, 2015, plus a pro-rata portion of the claim expenses.

58. In furtherance of its bad faith scheme, GRC then resumed its pre-settlement tactic of ignoring and evading UVMMC's requests.

59. Thereafter, UVMMC made the payments required by the settlement agreement, to which GRC had consented.

60. On June 3, 2015, having received no response to the February 19, 2015 submission, CCMSI sent another email to Ms. Sabia requesting a response to the February 19, 2015 request.

61. On June 4, 2015, CCMSI submitted another payment request on the GENESIS IntelliGen Portal confirming losses "Paid to Date" under the Workers Compensation laws totaling $1,082,809.20, consisting of $668,681.99 (indemnity) and $349,028.76 (medical), and claim expenses in the amount of $65,098.57.

62. Thus, as of June 4, 2015, GRC was obligated to indemnify UVMMC in the amount of $517,710.70 ($668,681.99+ $349,028.76 - $500,000) for losses incurred through June 4, 2015, plus claim expenses.

63. In furtherance of GRC's bad faith scheme, on June 5, 2015 Ms. Sabia provided the following non-response, "With regard to the 2/19/2015 submission (which would have been a First payment), I took the submission off-line because the loss was just about to be settled, and I figured Genesis would be receiving a Final request shortly thereafter. I do see the final request came in June 4[th]. I will work on it next week."

64. In furtherance of its bad faith scheme, GRC then did nothing to respond to the claim.

65. On July 12, 2015, CCMSI again asked Ms. Sabia for a response.

66. In furtherance of GRC's bad faith scheme, in another email dated July 13, 2015, Ms. Sabia, stated, "I alerted my manager to this, and he is going to review this week. If he has any questions, he will let me know right away. Otherwise, he will forward to the

Claim Department Manager for final review.   I will keep track of the status and get back to you (or [sic]) next week.  Thank you."

67. In furtherance of its bad faith scheme, GRC then resumed its tactic of ignoring the claim.

68.  On August 13, 2015, UVMMC's attorney wrote again to GRC's agent, Mr. Duran, again demanding reimbursement under the Policy.

69. In furtherance of GRC's bad faith scheme, in a telephone message on August 13, 2015, Mr. Duran stated that he was sorry about the delays thus far, and would "personally get on this tomorrow" to "make sure we have this postured so that we can respond to a request for reimbursement." In this message he also stated he needed to "adjust our reserves which will need to be approved by my manager," and he would "respond" no later than Monday."

70. In furtherance of GRC's bad faith scheme, on August 17, 2015, UVMMC's attorney received a letter from an attorney who stated that "Genesis Management and Insurance Services Corporation ("Genesis"), on behalf of General Reinsurance Corporation, has retained this firm as coverage counsel," and that "I will respond in the near future to the specific statements in your letter."

71. In furtherance of GRC's bad faith scheme, on August 27, 2015, GRC's attorney sent a letter to UVMMC's attorney which purported to reserve GRC's purported right to "deny a duty to indemnify" on four grounds.

72. First, GRC's attorney asserted a purported right to "deny a duty to indemnify" on the ground that UVMMC "breached its notice obligations to GRC under the Policy."

    a.   However, strict compliance with GRC's notice requirements or expectations is not included in the "Conditions" for coverage stated in the Policy.

    b. Moreover, as set forth above, UVMMC provided ample notice to GRC that the Loss on the Claim was exceeding the Retention and detailed explanations well in advance of the settlement, including in the form of reports from GRC's own approved defense counsel.

    c. To the extent the Policy required any specific notice procedures -- which it did not – GRC has not specified how UVMMC may have deviated from those procedures, nor has it asserted any resulting prejudice.

73. Second, GRC's attorney asserted a purported right to "deny a duty to indemnify" on the ground that UVMMC "assumed liability that it did not have under Vermont's workers' compensation law."

    a. However, the Policy does condition coverage on whether or not UVMMC actually *had* liability for the benefits it provided.

    b. The Policy only permits a denial of coverage if "the Insured violated or failed to comply with any Workers Compensation Law" with respect to the claim.

    c. GRC has never asserted, and in good faith could not assert, that this ever occurred.

    d. Providing benefits which might have been contested does not "violate or fail to comply with any Workers Compensation Law."

74. Third, Mr. Treuer asserted that UVMMC's "losses are the result of cumulative trauma or specific injuries after 2001."

    a. This assertion, to the extent it was supportable by admissible evidence, could have been a basis for contesting Claimant's entitlement to certain benefits by asserting that the conditions for which Claimant was seeking such benefits did not represent

15

a continuance, recurrence, or worsening of Claimant's compensable work injury, but were caused by a new, unrelated injury or aggravation.

b. However, the possibility that UVMMC's licensed workers compensation claims adjusters might have contested and litigated Claimant's entitlement to certain benefits on this basis but elected not to do so does not mean that the benefits were paid because "1. of serious and willful misconduct of the Insured; 2. The Insured employed an employee in violation of law; 3. the Insured failed to comply with a health or safety law or regulation; 4. in violation of the Workers' Compensation Law, the Insured discharged, coerced, or otherwise discriminated against any employee; or 5. the Insured violated or failed to comply with any Workers Compensation Law," which are the only Conditions for non-coverage stated in the Policy.

c. The Policy does not permit GRC to contest its obligation to reimburse UVMMC by second-guessing the decisions made by UVMMC's licensed workers compensation adjusters with respect to whether to accept or contest certain benefits in connection with the Claim.

75. Fourth, Mr. Treuer asserted that UVMMC "failed to properly investigate, defend or handle the Peake claim."

a. Coverage under the Policy is not conditioned upon whether or not UVMMC "properly" investigated, defended, or handled the Claim.

b. GRC may not deny coverage on the basis of any alleged failure to "properly" investigate, defend or handle the claim because it does not, and in good faith cannot, assert that any payments were made because "1. of serious and willful

misconduct of the Insured; 2. The Insured employed an employee in violation of law; 3. the Insured failed to comply with a health or safety law or regulation; 4. in violation of the Workers' Compensation Law, the Insured discharged, coerced, or otherwise discriminated against any employee; or 5. the Insured violated or failed to comply with any Workers Compensation Law."

76. None of the grounds asserted by GRC's attorney in support of his purported "reservation of rights" provide a good basis for refusing to reimburse UVMMC for its losses covered by the Policy.

77. Moreover, each of the four grounds asserted could have been asserted, if they had any good-faith basis, before UVMMC entered into the lump sum settlement, with GRC's consent,  which increased the covered loss from $24,395.35 (plus expenses) to $517,710.70 (plus expenses).

78. In furtherance of GRC's bad faith scheme, Mr. Treuer's letter also purported to reserve GRC's alleged "right to continue its investigation and request[ed] additional information about the claim," as well as GRC's alleged right "to file an action for declaratory relief."

79. GRC had already been provided with all of the information reasonably required to confirm its obligation to provide coverage prior to giving its consent to the lump sum settlement.

80. On November 11, 2015, CCMSI again submitted its request for payment through the GENESIS IntelliGen Portal.

81. In furtherance of GRC's bad faith scheme, on November 11, 2015, GRC's agent, Lisa Sabia, advised CCMSI that "requests for reimbursement are on hold pending the outcome of litigation in this matter."

82. As of November 11, 2015, and at all times prior to the filing of this Complaint, no litigation had been commenced in this matter.

83. As a direct, foreseeable, expected and intended consequence of GRC's bad faith conduct, described above, UVMMC has been compelled to incur legal fees and expenses in addition to the covered claim expenses, for the purpose of litigating this matter.


## COUNT I: BREACH OF CONTRACT

84. The foregoing paragraphs are incorporated by reference into this Count I.

85. GRC has breached its express contractual obligations to UVMMC, as set forth in the terms of the Policy.

86. GRC has also breached the obligation of good faith and fair dealing which is an implied term of every contract as a matter of law.

87. As a direct and proximate consequence of GRC's breach of its contractual obligations, UVMMC has incurred financial losses for which it is entitled to recover damages.

88. GRC has breached its contractual obligations to UVMMC willfully or recklessly, with a malicious intent to cause harm to UVMMC, warranting an award of punitive damages.

89. GRC's breach of contract has compelled UVMMC to initiate litigation which should not be necessary, such that an award of expenses, including attorney fees, is warranted.


## COUNT II:  TORTIOUS BAD-FAITH

90. The foregoing paragraphs are incorporated by reference into this Count II.

91. GRC had and has no reasonable basis for its failure and refusal to indemnify UVMMC.

92. GRC has knowingly, recklessly and, or, in the alternative, intentionally disregarded the lack of any reasonable basis for its failure and refusal to indemnify UVMMC.

93. GRC's obligation to indemnify UVMMC in the amount claimed was and is not fairly debatable.

94. As a direct and proximate consequence of GRC's bad faith conduct in connection with this claim, UVMMC has incurred financial losses for which it is entitled to recover damages.

95. GRC has acted willfully or recklessly, with a malicious intent to cause harm to UVMMC, warranting an award of punitive damages.

96. GRC's bad faith has compelled UVMMC to initiate litigation which should not be necessary, such that an award of expenses, including attorney fees, is warranted.

**COUNT III: UNFAIR AND DECEPTIVE TRADE PRACTICES**

88. The foregoing paragraphs are incorporated by reference into this Count III.

89. UVMMC is a "consumer" within the meaning of 9 V.S.A. § 2451(a).

90. GRC is a "seller" within the meaning of 9 V.S.A. § 2451(c).

91. The indemnification obligations undertaken by GRC under the Policy are "goods" or "services" within the meaning of 9 V.S.A. § 2451(B).

92. UVMMC (d/b/a FAHC) contracted for GRC's goods and services under the Policy in reliance upon GRC's representations in the Policy.

93. GRC failed to provide indemnification in the manner it offered under the terms of the Policy under circumstances where its obligation to provide indemnification was and is not fairly debatable.

94. GRC's bad faith scheme reflects a deliberate practice by GRC to fail and refuse to promptly pay valid claims for excess insurance coverage.

95. GRC's conduct violates the public policy of the State of Vermont, as reflected in the Vermont Insurance Trade Practices Act, 8 V.S.A. §4724 (1); (9)(A), (B), (C), (D), (F), (G), (K), (L), (M); 10; 17; 18.

96. GRC's bad faith handling of UVMMC's claim for insurance coverage, and its failure to effectuate a prompt, fair and equitable settlement of UVMMC's claim for indemnification after GRC's obligation to pay the claim had become clear, constitutes unfair and deceptive acts and/or practices in commerce, which are unlawful pursuant to 9 V.S.A. § 2453(a).

97. GRC, through its representations, practices, and/or omissions misled UVMMC to believe that UVMMC would be indemnified under the Policy for the Claim.

98. UVMMC's reliance upon GRC's representations, practices, and/or omissions was reasonable under the circumstances.

99. GRC's misleading representations, practices, and/or omissions were material in that they caused UVMMC to incur financial losses.

100. Under 9 V.S.A. §2461(b), UVMMC is entitled to recover damages for its financial losses, reasonable attorneys' fees, and exemplary damages up to three times the value of consideration given by UVMMC to GRC.

**WHEREFORE,** UVMMC demands judgment in its favor and against GRC in the amount of $517,710.70 plus claim expenses, and an award of punitive damages, costs, attorney fees, interest, and such other further and additional legal and equitable relief as the Court deems just and appropriate.

## Demand For Jury Trial

Plaintiff UVMMC demands a trial by jury on all issues so triable.


Dated:  Springfield, Vermont
       November 19, 2015

By: _____

    Stephen D. Ellis, Esq.
    **Ellis Boxer & Blake PLLC**
    24 Summer Hill Street
    P.O. Box 948
    Springfield, Vermont 05156
    Phone:  802-885-2141
    Fax:  802-885-2131
    sdellis@ellisboxer.com